156 So. 556
## NORRIS v. STATE.
### 8 Div. 582.

Supreme Court of Alabama.
June 28, 1934.

Rehearing Denied Oct. 4, 1934.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

Samuel S. Leibowitz, Jos. R. Brodsky, Osmond K. Fraenkel, George Rosier, and Carol King, all of New York City, and George W. Chamlee, Sr., of Chattanooga, Tenn., for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for the State.

230

GARDNER, Justice.

This is defendant's second appeal from a judgment of conviction of rape on the person of one Victoria Price. The first judgment of conviction, in the circuit court of Jackson county, where the indictment was preferred, was here affirmed (Weems v. State, 224 Ala. 524, 141 So. 215), and subsequently reversed by the Supreme Court of the United States (Powell v. State of Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527) upon the theory of inadequate representation by counsel.

From these authorities, in connection with a consideration of the separate appeals of those jointly indicted with this defendant (Patterson v. State, 224 Ala. 531, 141 So. 195; Powell v. State, 224 Ala. 540, 141 So. 201), the interested reader may obtain a more complete history and outline of the salient facts, the reiteration of which is here unnecessary.

Mindful of our duty in cases of this character, we have carefully scanned the record for error whether or not pressed upon our attention, with the result that we find all questions of any moment and deserving of separate treatment in our opinion are those forcibly urged by counsel in oral argument and in brief. The discussion here will therefore be confined to those questions, which will be here considered in the order of their presentation in brief.

The first relates to the action of the trial court in overruling defendant's motion to quash the indictment. Defendant is a negro, and insists in his motion that his rights under the Fourteenth Amendment to the Constitution of the United States have been violated, in that persons of the negro race, duly qualified under the laws of Alabama to serve as members of the grand jury that found the indictment against him, were excluded from the list from which said grand jury was drawn,

and from the said grand jury, solely by reason of their race and color.

■ The state joined issue on this motion and denied the averments thereof. The rule applicable appears to have been definitely settled by the Supreme Court of the United States, illustrated by the following brief excerpts from one or two decisions. From Carter v. Texas, 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839, quoted in Rogers v. Alabama, 192 U. S. 226, 24 S. Ct. 257, 259, 48 L. Ed. 417, the following: "Whenever, by any action of a state, whether through its legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him, contrary to the 14th Amendment of the Constitution of the United States. Strauder v. West Virginia, 100 U. S. 303 [25 L. Ed. 664]; Neal v. Delaware, 103 U. S. 370, 397, 26 L. Ed. 567, 574; Gibson v. Mississippi, 162 U. S. 565, 40 L. Ed. 1075, 16 S. Ct. 904."

And the burden rests upon the accused to offer proof in support of the motion, or, as expressed in Martin v. Texas, 200 U. S. 316, 26 S. Ct. 338, 339, 50 L. Ed. 497, "the grounds assigned for quashing the indictment should have been sustained by distinct evidence, introduced or offered to be introduced, by the accused."

The Martin Case, supra, is also to the effect that the mere fact that no one of the negro race was on the grand jury that returned the indictment does not suffice to show any discrimination, the court saying: "A different conclusion in this case would mean that, in a criminal prosecution of a negro for crime, an allegation of discrimination against the African race because of their race could be established by simply proving that no one of that race was on the grand jury that returned the indictment or on the petit jury that tried the accused; whereas, a mixed jury, some of which shall be of the same race with the accused, cannot be demanded, as of right, in any case; nor is a jury of that character guaranteed by the 14th Amendment. What an accused is entitled to demand, under the Constitution of the United States, is that, in organizing the grand jury as well as in the impaneling of the petit jury, there shall be no exclusion of his race, and no discrimination against them, because of their race or color. Virginia v. Rives (Ex parte Virginia) 100 U. S. 313, 323, 25 L. Ed. 667, 671; In re Wood (Wood v. Brush) 140 U. S. 278, 285, 35 L. Ed. 505, 11 S. Ct. 738. Whether such discrimination was practiced in this case could have been manifested only by proof overcoming the denial on the part of the state of the facts set out in the written motions to quash. The absence of any such proof from the record in this case is fatal to the charge of the accused that his rights under the 14th Amendment were violated." Other authorities noted are: Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664; Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667; Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676; Gibson v. Mississippi, 162 U. S. 565, 16 S. Ct. 904, 40 L. Ed. 1075; Lee v. State, 163 Md. 56, 161 A. 284; Bonaparte v. State, 65 Fla. 287, 61 So. 633; Lewis v. State, 91 Miss. 505, 45 So. 360.

■ The jury board in this state is composed of three members, and the qualifications for jurors are set out in section 8603, Code 1923 (see, also, Gen. Acts 1931, pp. 44 and 55), as follows: "The jury commission shall place on the jury roll and in the jury box the names of all male citizens of the county who are generally reputed to be honest and intelligent men, and are esteemed in the community for their integrity, good character and sound judgment, but no person must be selected who is under twenty-one or over sixty-five years of age, or, who is an habitual drunkard, or who, being afflicted with a permanent disease or physical weakness is unfit to discharge the duties of a juror, or who cannot read English, or who has ever been convicted of any offense involving moral turpitude. If a person cannot read English and has all the other qualifications prescribed herein and is a freeholder or householder, his name may be placed on the jury roll and in the jury box."

There can be no objection to this statute, and none is interposed as to its validity. Speaking of a similar statutory provision of the state of South Carolina, the court in Franklin v. South Carolina, 218 U. S. 161, 30 S. Ct. 640, 642, 54 L. Ed. 980, said: "We do not think there is anything in this provision of the statute having the effect to deny rights secured by the Federal Constitution. It gives to the jury commissioners the right to select electors of good moral character, such as they may deem qualified to serve as jurors, being persons of sound judgment and free from all legal exceptions. There is nothing in this statute which discriminates against individuals on account of race or color or previous condition, or which subjects such person to any other or different treatment than other

electors who may be qualified to serve as jurors. The statute simply provides for an exercise of judgment in attempting to secure competent jurors of proper qualifications."

The argument is directed, therefore, not against the statute, but its administration by the jury commissioners as agencies of the state. This becomes, of course, a matter of proof. Martin v. Texas, 200 U. S. 316, 26 S. Ct. 338, 50 L. Ed. 497.

Both defendant and the state so proceeded, and much evidence was offered on the issue thus framed. Any detail discussion would extend this opinion to undue length, and reference will be made only to salient features of the proof and legal principles applicable thereto.

The total population of Jackson county is 36,881, of which there are 18,801 males. The white population is 34,192, and that of the colored race, 2,688. It thus appears at the outset that the negro population form a small percentage of the total population. As to the male population over twenty-one years of age there are 8,801, and of these only 666 are of the negro race. In some parts of the county there are very few negroes at all, as disclosed by the testimony of the witness Stewart, one of the jury commissioners, who stated that south of the river there are "practically no negroes living in there."

And as throwing some light on this phase of the question, though of no material importance, is the further proof that in so large a county as Jackson there is not a single negro doctor.

True defendant's proof tends to show that in a long number of years no negro had been called for jury service in that county, and such proof, under the authorities, is to be given its due weight. But the question presented is much broader than that, and unless the court is persuaded from all the evidence there has been a discrimination against the negro on account of his race or color, by his exclusion from the jury roll on the part of the jury commission for that reason, the motion is not sustained. For the authorities are all to the effect that a member of the colored race, party to a trial involving his life, liberty, or property, cannot claim, as a matter of right, that his race shall have a representative on the jury, and that a mixed jury in a particular case is not, within the meaning of the Constitution, necessary to the equal protection of the law. The only right in this respect, to which he is entitled, is "that in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race,

and no discrimination against them, because of their color." Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567.

The proof before the trial judge is ample to sustain the view that these jury commissioners made no exclusion of any negro from the jury roll on account of his race or color, and that in point of fact in the discharge of their duties, it was not so much a matter of exclusion as of selection so as to obtain for that important function of judicial government those best suited for such important service. These commissioners are under our law vested with a wide discretion (State v. Curtis, 210 Ala. 1, 97 So. 291), and as stated in Green v. State, 73 Ala. 26, it is the policy of our statute "that grand and petit jurors in this State should be a selected class, not an indifferently summoned number from the whole body of electors." And speaking of the statutory qualifications for jurors in substantial respects the same as exist in our present statute, and of the duties of those officials upon whom the selection falls, this court, in the Green Case, supra, made these pertinent observations: "It will be observed that the statute copied above fixes a high standard of qualifications for jurors, grand and petit. They must be selected by certain officers of the county, who are supposed to be, and usually are men of intelligence and good character, and who, being sworn officers, are bound by their official oaths to discharge this duty honestly and impartially. They must be governed by their opinion and judgment; and are equally bound by their oaths to reject persons who, in their opinion, do not possess the requisite qualifications, as to select those who come up to the standard. The qualifications we have said are high. To authorize selection, the person must be a householder or freeholder in the county, and, in the opinion of the officers performing the service, must be competent to discharge the duties of grand and petit jurors with honesty, impartiality and intelligence, and must be esteemed in the community for his integrity, fair character and sound judgment. These are strong words, and, collectively, constitute an enviable character. In the administration of the law, many householders and freeholders must fall below the standard."

And coming to still further consideration of the proof in the instant case, it appears that many householders and freeholders did fall below this standard, and this without regard to color or race, for the proof discloses undisputedly that in fact the commissioners in discharge of their duties omitted from the jury roll more white male citizens of the coun-

ty possessing the proper age qualifications than the entire negro population of the county.

The evidence tended further to show that the jury roll was selected from a list prepared by the clerk of the board composed of the entire male citizens of the county between the ages of twenty-one and sixty-five. There were negroes on the tax list, on the registration or list for voters, and presumably we may add on the telephone directory, all three of which were resorted to by the clerk for the purpose of obtaining these names, in connection with other available sources. The commission called in different reliable parties from various precincts, and questioned them as to the names on the list thus presented for their consideration by the clerk. The testimony is further to the effect that the matter of race, color, politics, religion, or fraternal affiliations never entered into their discussion or consideration in selecting those to go upon the jury roll, and they did not know, and therefore could not say, whether any of the negro race was on the roll or not, as they could not recall the names, and did not personally know all the individuals.

The proof is further to the effect that the jury commission did not "automatically or systematically exclude anybody," and that the question of race or color was not mentioned, and no one excluded on account thereof.

As emphasized in the case of Green v. State, supra, the qualifications of jurors are high, and many citizens within the proper age must necessarily fall below the mark, and the exclusion by the commission of so many of the white population gives some indication at least that the commission went about its duty with an honest and sincere purpose to select the best available men for this important service.

The commission was thus in the exercise of official discretion, wide in its scope, and not even to be superseded by that of the trial judge, as held by this court in State v. Curtis, 210 Ala. 1, 97 So. 291. Of necessity this discretion must be reposed somewhere, and under our statute the jury commission is given its exercise. Some one of necessity must decide who are to serve. If these officers exercise this discretion unwisely, as said in Green v. State, supra, who can know this or adequately supervise their deliberations? The discussion of this phase of the question by the Mississippi court in Lewis v. State, 91 Miss. 505, 45 So. 360, 361, is in harmony with our own decisions, where the court said: "This is the guide by which the board of su-

pervisors shall be governed in the selection of those who are to serve as jurors, and it was the object and the purpose of the law to give them wide discretion in the selection of jurors, in order that they might secure persons of good intelligence, sound judgment, and fair character, to the end that there may be nothing but the purest administration of the law. There is nothing in the law which permits them to discriminate and refuse to take a negro on a jury simply because he is a negro; neither are they required to take him on the jury because he is a negro. They are only required to select persons of good moral character, and when, in the exercise of that discretion vested in them by the law, they have done this in an honest purpose to get good men on the jury, irrespective of the race to which they belong, and without discrimination merely on account of race or color, they have exercised a discretion not subject to review by this court, or any other court."

And as observed by this court in the Green Case, supra: "The matter of selection or rejection is left to the opinion (judgment) of the officers charged with the duty. Who is to review this, or pronounce on their motives? If their opinion or judgment is to control them, how can their conduct, in the absence of abuse of their discretion, and fraud, become the subject of review?"

The mere rejection, in their discretion, of a member of the colored race, no more than that of the white race, presents nothing for judicial review. It is only such rejection because of race or color that gives rise to the discrimination inhibited by the Constitution. There is no evidence here justifying such a conclusion.

True defendant examined several members of his own race to show these negroes, some farmers, others plasterers, dry cleaners, porters, janitors, and some in the mercantile business, and others preachers, possessed the necessary qualifications, and were never called to serve on the jury; but a close analysis of this evidence discloses much lack of information on the part of the witnesses upon the question of qualification for jury service, and is properly to be valued as a mere expression of their opinion concerning the duties of the commission in this regard.

On the other hand, defendant's witness Benson, editor of the local newspaper and evidently widely informed as to the county and its citizenship, and who knew "nearly all" of the negroes there, testified that while he knew some good negroes, with good reputations, yet he would not be willing to say

there were any that possessed the necessary qualifications for jury service, and he based his opinion upon the requirement of good judgment. It was his view those he knew lacked that sound judgment that should characterize a juror.

Thus far we have treated the question upon the assumption (though not proven) that in fact the name of no negro appears on the jury roll of Jackson county, and we reach the conclusion that, even so assuming, the evidence fails to sustain the theory that any such omission was on account of race or color. And after all, that is the only inquiry of importance here.

The cases noted by counsel for defendant, in most part herein cited, have been examined with care, but none of them bear analogy to the facts presented in the instant case, and the foregoing conclusion is reached upon an application of the law clearly stated in these decisions to the evidence adduced.

We have not overlooked defendant's insistence that the names of six or more negroes now appearing on the jury roll were fraudulently placed there. But this charge in no manner involves any member of this jury board, as defendant insists this was done after this board went out of office and relinquished all control over the books. We gather from the proof that the charge of fraud, if any was committed, was, by implication at least, laid at the door of the clerk of the board, who testified before the trial judge together with the handwriting expert. The trial court was not persuaded the charge of fraud in this regard had been sufficiently sustained. But, concluding as we do that the ruling of the court below was fully justified by the proof, irrespective of this question, a consideration of that phase of the matter is here wholly immaterial, and we pass it by without any expression of opinion thereon.

The insistence that the court deprived defendant of the opportunity to prove the matter of discrimination is wholly refuted by the record.

█ Numerous witnesses were examined by defendant as well as by the state, and the whole question, so far as can be judged from this record, was heard with patience and due care. The last witness examined by defendant was the handwriting expert. On the day before this witness was examined, defendant had completed the examination of all his witnesses present, and requested that the hearing be not closed until the expert from New York arrived. The court granted the request, and adjourned court until the following morning, when the expert appeared, and the court ordered a recess, even at that time "for from one to two hours for the witness to examine the record." When the expert witness had concluded, the defendant then asked for further continuance to procure other witnesses. This was a matter addressing itself to the wise discretion of the trial judge, and his action thereon will not be here reviewed in the absence of any abuse thereof. Bell v. State, 227 Ala. 254, 149 So. 687; Jarvis v. State, 220 Ala. 501, 126 So. 127.

█ As to the absent witnesses who had been subpœnaed, the record discloses they were not present when the case was called, and the court offered to have attachments issued, if so desired; but attachments were not requested, nor, indeed, did defendant desire attachments at this time, but merely a delay of the trial that their presence might in some way be otherwise procured. Manifestly such character of procedure would prove a hindrance to the prompt and orderly administration of the law. The insistence is wholly lacking in merit, and needs no further treatment.

Counsel evidently were entirely familiar with the case in all its phases, and there was no surprise. Clearly no abuse of discretion here appears, but, on the contrary, a patient and full hearing had. The case of Martin v. Texas, 200 U. S. 316, 26 S. Ct. 338, 50 L. Ed. 497, cited by defendant, bears no analogy.

██ Upon the ruling on the motion to strike the trial venire, little need be said. In the discussion of the motion to quash the indictment, the applicable law has been stated and the authorities cited. Each rests upon a consideration of an issue of fact (Thomas v. Texas, 212 U. S. 278, 29 S. Ct. 393, 394, 53 L. Ed. 512), and, as approvingly quoted in this latter authority, "If they (the jury commission) fairly and honestly endeavored to discharge their duty, and did not in fact discriminate against the negro race in the selection of the jury lists, then the Constitution of the United States has not been violated."

As in Jackson county, there was conflict in the evidence as to whether or not there were men of the proper age of the colored race suitable and competent for jury service, though the percentage of the colored population is some larger in Morgan than in Jackson county.

Defendant's proof in large part relates to the absence from jury service of members of the colored race for a long number of years, and the opinion evidence of several members

of the race giving a list of names of colored men in the county whom they consider possess the necessary qualifications for such service, and who have never been called for that purpose.

It may be here interpolated that as to doctors and preachers, some of whom gave evidence upon this question, the proof is without dispute that the jury commission, in view of the right of their exemption by statute, omitted all of these classes entirely from the jury list.

J. A. Tidwell was a member of the jury board that prepared the jury roll from which this venire was taken. He states that the commission selected the jury roll from a list of all the male citizens of the county between twenty-one and sixty-five years of age, irrespective of race or color. Inquiry, was made among various citizens, including some of the colored race, and neither race nor color was considered by the board in making up this roll. The witness was shown the lists of names offered by defendant's witnesses as possessing proper qualifications, and stated that to the best of his recollection the board considered the names of the persons on those lists, sitting officially in their deliberations.

The testimony of the two other members of the board consisted of their affidavits, and were to the effect that the jury roll was selected by them from a list of every male citizen of Morgan county between twenty-one and sixty-five years of age, and that from this they selected those persons who, in their opinion, possessed the prescribed qualifications, and excluded none on account of race or color. The commissioners further state they do not know definitely whether the names of any colored citizens appear on the jury roll or not, inasmuch as it was impossible to know each one personally.

We have previously observed the high standard of qualification for jury service. Deeply embedded in our judicial system is the right of trial by jury. However imperative it may be that the judges be learned in the law and capable of its proper interpretation in their instructions to the jury, yet, after all, it is the jury that holds in its hand the life, liberty, and property of the citizens. Theirs may well be denominated a sacred trust, and the importance of calling for such high service men of intelligence, character, and sound judgment cannot be too greatly stressed. The discretion as to the composition of the jury roll must be vested in some one, and in this state our statute has imposed this duty upon three jury commissioners appointed by the Governor. Presumably these officers faithfully discharge their duty.

To prove the contrary defendant offers evidence that for a long number of years negroes have not served on the jury, and the opinion evidence of witnesses of that race that a named list of negroes are competent for that purpose. This may present a conflict of opinion as to the proper persons to serve, but clearly such proof cannot suffice to overturn the testimony of these commissioners that they considered neither the question of race nor color, but acted conscientiously in the discharge of their duty to get the best available material for that purpose. Doubtless (nothing appearing in the record to the contrary) as in the Jackson county matter, a large number of white men were also omitted from the rolls. This would not, however, show discrimination, but selection only, and the exercise by the commissioners of their discretion. The discrimination, to avail defendant, must be on account of race or color.

If the members of the jury commission are to be believed, no such discrimination was shown. On the contrary, it is emphatically disproved. These officers are clearly without personal interest in this case, and we find nothing in this record to justify the conclusion they have deliberately testified falsely. And that conclusion must be reached if defendant's contention is to prevail.

The case from the Maryland court of Lee v. State, supra, as well as other authorities cited by defendant, bear no analogy to the instant case upon the facts presented. But further discussion need not be indulged.

We are of the opinion the proof clearly shows, to paraphrase the quoted expression in Thomas v. Texas, 212 U. S. 278, 29 S. Ct. 393, 53 L. Ed. 512, that these commissioners did fairly and honestly endeavor to discharge their duty, and did not in fact discriminate against the negro race in the selection of the jury list, and that no provision of the Federal Constitution has been infringed.

The motion to quash the trial venire was therefore properly denied.

 The hearing of this motion was upon evidence had on a former trial, and seems to have been full and complete. The testimony of J. A. Tidwell was in that manner offered in evidence, but the trial judge was of the opinion the witness should have been permitted to answer a question on cross-examination that was denied on the former hearing. To this end, the witness was recalled and the question asked and answered. The record

discloses that this was after the completion of the evidence on the motion and that the court stated that was all defendant had requested. Any further questioning, under these circumstances, was a matter resting in the wise discretion of the court, and in the exercise of which we see no abuse. There is nothing in the record to justify any charge that defendant was denied opportunity to prove his motion. Full opportunity was accorded.

As previously noted, defendant was formerly tried and convicted in Jackson county, and upon a reversal of the judgment when the cause was again called for trial a motion for change of venue was presented. The motion was granted, and the trial moved to Morgan county. Upon the call in Morgan county, defendant again moved for a change of venue.

While our statute (section 5581, Code 1923) contemplates but one change of venue, yet the state made no resort to the statute, and the trial judge rested his ruling on the merits. We treat the question in like manner, and irrespective of the statute.

■ We concur in the observation of the trial judge that the motion is embellished with irrelevant matter, but in the main it rests as to proof upon the affidavits of employed investigators as to what a number of citizens stated as their view of the case. Numerous counter affidavits were offered by the state, and a number of these citizens, charged to have been interviewed, denied any such conversation. Significant, however, is the further proof, offered by the state, to the effect that at least five of those charged to have been so interviewed had been dead some time before the alleged conversation. As observed by the learned trial judge, this established fact "strikes at the very vitals of the credence to be given such an affidavit." The burden rested upon defendant to show to the reasonable satisfaction of the court that an impartial and unbiased verdict could not reasonably have been expected in that county. Hendry v. State, 215 Ala. 635, 112 So. 212; Owens v. State, 215 Ala. 42, 109 So. 109; Powell v. State, 224 Ala. 540, 141 So. 201; Patterson v. State, 224 Ala. 531, 141 So. 195.

■ Without further discussion, we rest content with the statement of our conclusion that upon consideration of the conflicting proof we are not persuaded there was any error in the denial of the motion for a change of venue.

■ Defendant excepted to the ruling of the court on a challenge for cause relating to Jurors Humphrey, Sivley, and Watson.

Our decisions relative to such questions are reviewed in the recent case of Peterson v. State, 227 Ala. 361, 150 So. 156, and the governing principles need no reiteration here, further than to note that much weight is to be given to the conclusion of the trial judge who sees and hears the prospective juror, and the reviewing court should exercise caution, and not set aside the finding of the trial court unless it affirmatively appears that on the answers of the jurors, taken as a whole, he entertained a fixed opinion which would bias his verdict.

The examination of the three above-named prospective jurors, of which counsel in brief complain, appears on pages 499 to 510 of the record. As to Humphrey no reason whatever appears for any challenge for cause, and as to Watson and Sivley the answers of these jurors to the questions propounded by the court fully justified their acceptance. We find nothing in the record that would justify the disturbance of the ruling of the court in this regard.

■ In large part the argument as to any prejudicial conduct on the part of the trial judge is directed to a companion case (both being embraced in a single brief), rather than to this. As to this particular record we rest content with the observation that the argument upon the question is so lacking in support of the record that we feel no necessity exists for a discussion thereof. The cases cited (Griffin v. State, 90 Ala. 596, 8 So. 670; Moulton v. State, 199 Ala. 411, 74 So. 454; Burns v. State, 226 Ala. 117, 145 So. 436; Daggett v. Boomer, 210 Ala. 673, 99 So. 181) are not analogous.

True the trial judge interposed an occasional question, which, of course, is entirely proper, and may have on one or two occasions manifested slight impatience; but we are not in an advantageous position to judge the matter of provocation. All considered, the trial appears to have been conducted with proper regard to all administrative rules, as well as due regard for defendant's rights, and we find nothing in the conduct of the trial judge to merit any condemnation here.

■ No question of consent for sexual intercourse on the part of the prosecutrix was here involved. No such defense was interposed, but, on the contrary, defendant's proof was to the effect that no assault whatever was committed on the person of the prosecutrix, and, in fact, no such crime, as testified to by her, occurred.

The rule here prevailing is stated in Patterson v. State, 224 Ala. 531, 141 So. 195, 197,

as follows: "Previous chastity is not an essential element of the offense charged in the indictment, and, where this is so, rape may be committed on an unchaste woman, or even a common prostitute," and reiterated in Powell v. State, 224 Ala. 540, 141 So. 201.

Defendant insists, however, that notwithstanding the established rule, it was permissible for defendant to ask of the prosecutrix as to her conviction of any offense involving moral turpitude by way of impeachment of the witness, and as affecting her credibility. And it may be conceded that the crime of adultery is one involving moral turpitude. Sexton v. State, 48 Tex. Cr. R. 497, 88 S. W. 348; Morrison v. State, 85 Tex. Cr. R. 20, 209 S. W. 742, 6 A. L. R. 1607. See, also, Pippin v. State, 197 Ala. 613, 73 So. 340; Ex parte Marshall, 207 Ala. 566, 93 So. 471, 25 A. L. R. 338; Moore v. State, 12 Ala. App. 243, 67 So. 789.

It is therefore insisted reversible error was committed in sustaining the state's objection to the question propounded by defendant on cross-examination of the prosecutrix: "Were you ever convicted of the crime of adultery?" The answer to the argument is that under our decisions the question is too broad, and does not embrace the appropriate predicate. This for the reason that the decisions here are uniform to the effect that our statute (section 7722, Code 1923) relating to the competency and credibility of witnesses as affected by conviction for crime, contemplates only convictions for violation of the state laws, and not convictions for violations of municipal ordinances. Gillman v. State, 165 Ala. 135, 51 So. 722; Cheatham v. State, 59 Ala. 40; Burns v. Campbell, 71 Ala. 271; Williams v. State, 144 Ala. 14, 40 So. 405, 407; Swope v. State, 4 Ala. App. 83, 58 So. 809; Wilson v. Vassar, 214 Ala. 435, 108 So. 250, 252.

In Wilson v. Vassar, supra, it was distinctly held that the defendant should have indicated by his question whether or not the inquiry concerned the conviction for the violation of a state statute; the court saying:

"The defendant asked him on cross-examination, and the court sustained objection to the question, 'Have you ever been arrested in the city court and paid a fine for either buying or receiving or concealing stolen property?' It appears this city court of Bessemer was the mayor's court, and by the question defendant was inquiring as to the conviction of the witness of violating ordinances and not as to the conviction of the witness for violating state statutes on the subject mentioned. The defendant did not clearly indicate by his question, as he should have done, that he was inquiring if the witness had been convicted of violating the state statute on the mentioned subject, and the trial court will not be placed in error for sustaining the objection to the question, because this court in Gillman v. State, 51 So. 722, 165 Ala. 135, in construing section 4008 of the Code of 1907, which is the same as section 7722, Code of 1923, wrote:

"'Section 4008 of the Code, relating to the competency and credibility of witnesses as affected by conviction for crime, contemplates only convictions for violations of the state laws, and not convictions for violations of municipal ordinances. Cheatham v. State, 59 Ala. 40.'

"See, also, Burns v. Campbell, 71 Ala. 273, 274(28)."

The case of Williams v. State, supra, is also authority to the effect that the question was subject to the objection on account of its generality. There the question was: "Were you ever convicted of a crime in the City Court of Montgomery?" The holding was that the statute had reference only to crimes that were infamous, and the objection to the question properly sustained by reason of the fact that it was too general, saying: "Irrelevant and illegal evidence would have been responsive to it, and where this is true of a question an objection may be properly sustained to it." Like reasoning is applicable here.

The violation of a state law must have been involved, and a conviction otherwise would be illegal and irrelevant. Therefore irrelevant and illegal evidence would have been responsive to the question. It was too general and subject to objection. And it is the rule of our decisions that a general objection may be properly sustained if the testimony is obnoxious to any rule of evidence whatever. Louisville & N. R. Co. v. Fleming, 194 Ala. 51, 69 So. 125. To like effect is the holding in Feore v. Trammel, 213 293, 104 So. 808, 812, reviewing the ruling of the trial court sustaining a general objection to a question, where the court said: "The objection was general, and on appeal the ruling must be sustained, if there was any good reason whatever why the testimony sought by the question should have been excluded." More recent cases recognizing and giving application to this same rule are Mobile & Ohio R. Co. v. Watson, 199 Ala. 585, 130 So. 199; Carter v. State, 226 Ala. 96, 145 So. 814; Morgan Hill Paving Co. v. Pratt City Sav. Bank, 220 Ala. 683, 127 So. 500.

238

These authorities and the reasoning applicable to this question apply with equal clearness to other questions of similar though even more general character, and they need no separate treatment. Indeed, all of these questions, including the one herein treated, give indication that this character of questioning was merely in the nature of a "fishing expedition," with nothing in the record to indicate any foundation in fact therefor. Flowers v. Graves, 220 Ala. 445, 125 So. 659; Morgan Hill Paving Co. v. Pratt City Savings Bank, 220 Ala. 683, 127 So. 500, 502.

But in any event, and this matter aside, under the cited decisions, the ruling of the court is here due to be sustained. The argument, therefore, for reversible error as to these rulings is without merit.

As previously observed, there was no question of consent here involved.

■ Objections of the state to questions seeking to show adulterous relations on the part of the prosecutrix with certain named individuals the night before the commission of the alleged crime, or even the night before leaving Huntsville, were properly sustained. All of this bore no relevancy to any issue in the case under the rule firmly established in this jurisdiction. Story v. State, 178 Ala. 98, 59 So. 480; Weems v. State, 224 Ala. 524, 141 So. 215. Nor is there anything in this record, argued as existing in the companion case of Patterson v. State, which, upon any theory, would render this evidence admissible.

■ Some other questions to prosecutrix on cross-examination were disallowed. They related to her movements in Chattanooga, whom she saw, to whom she spoke, and where she spent the night, or closely related matters, all of which, it does not appear, would be relevant to the charge of rape here considered. Though not to be too narrowly restricted (Mitchell v. Birmingham News Co., 223 Ala. 568, 137 So. 422; Pearce v. State, 226 Ala. 436, 147 So. 617), yet the extent of cross-examination is a matter resting largely in the discretion of the trial court (Doss v. State, 224 Ala. 90, 139 So. 290; Peterson v. State, 227 Ala. 361, 150 So. 156; Alabama Power Co. v. Berry, 222 Ala. 20, 130 So. 541), and we find no abuse of that discretion in the instant case.

The oral charge of the court appears to be full and comprehensive. Some few exceptions were reserved. Whether the exceptions were sufficiently definite under the rule, or merely descriptive (Buckley v. State, 19 Ala. App. 508, 98 So. 362), we need not stop to inquire, as considered upon their merits they present no reversible error.

One of the exceptions argued is to the statement that "the mere presence renders one guilty as well as he who committed the crime," and we are cited to Raiford v. State, 59 Ala. 106; State ex rel. v. Tally, 102 Ala. 25, 15 So. 722; Morris v. State, 146 Ala. 66, 41 So. 274. The difficulty with counsel, however, is not as to the law, so well understood, but with the fact that the exception lacks support in the record. The court in the oral charge had made no such statement, and was guilty of no such error. In brief we are referred to page 639 of the record (evidently meaning page 629) as to the language forming the basis of the exception. Perhaps a sufficient answer thereto is the following from the court's oral charge found on page 629: "Now, gentlemen, there are some other principles of law on which it is necessary for me to instruct you, in order for you to apply it in the consideration of the contentions of the parties. One is what is called the law of aiding and abetting. It is not necessary for me to undertake to give you the legal, technical definition of these words, but I can tell you in general terms what it means. It means this: That all parties who intentionally assist, encourage, or participate in the commission of a crime are just as guilty as if they had committed the crime themselves. To illustrate: If some party comes to you and tells you that he wants to break into a store in this town and wants to borrow your tools with which to break in, and you lend them to him for that purpose, and he breaks into that store with the tools, you are a burglar, and you are just as guilty of breaking into that store as if you had been there by yourself and had done it by yourself. That is true of any other crime. And further, and more on that subject. If you stand by while a crime is being committed by another or others, and you stand by for the purpose of giving aid, or encouragement by your presence, and that purpose is known to the party or parties committing the offense, and your mere presence does encourage him, and the act is done, then, gentlemen, you are an aider and abettor, and you are just as guilty as the party that committed the act."

Further treatment of this exception we consider unnecessary. Nor was there merit in the remaining argued exception relating to impeachment of a witness' character. The court was merely pointing out that this form of character impeachment is by witnesses who testify thereto, and not to particular acts or conduct. This was followed by instruc-

tions as to contradiction of a witness which may go to the question of his credibility. In respect to the exception reserved, the court stated he did not instruct the jury they must disregard the testimony of any witness for willful false testimony, but that they may do so.

 Counsel made oral request at the close of the oral charge that the jury be instructed in certain aspects, not here necessary to note. This for the reason the practice here observed admits of no such oral requests. If further instructions are desired, it is the duty of the party so desiring them to submit requested charges in writing. Such is our statute (section 9509, Code 1923), and our decisions interpreting the same. McPherson v. State, 198 Ala. 5, 73 So. 387; Peterson v. State, supra.

 It was the theory of the defendant (though he did not offer himself as a witness) that in fact no assault or rape occurred on the occasion of which prosecutrix complains.

The state offered proof of the assault by defendant, and evidence tending to show that he, and those with whom he was jointly indicted, acted in concert, aiding and abetting one another in the commission of the offense. Under these circumstances, the statement of defendant to the deputy sheriff that the "rest of the boys" committed the rape, but he did not, was admissible, and no error was committed in this regard. Fincher v. State, 211 Ala. 388, 100 So. 657; Brindley v. State, 193 Ala. 43, 69 So. 536, Ann. Cas. 1916E, 177.

 The judgment of conviction against this defendant was on December 6, 1933. The term of the court expired December 23, 1933. Defendant filed a motion for a new trial on January 2, 1934. It came too late.

In the companion case of Patterson v. State, this day decided, 156 So. 567,[1] this question is fully discussed with the citation of apt authorities, and needs no further treatment here. The question is one of jurisdiction, and the motion was properly stricken. Patterson v. State, supra; Morris v. Corona Coal Co., 215 Ala. 47, 109 So. 278.

 We may add, however, that the only question presented in the motion and not herein already considered, relates to the question of the weight of the evidence. And we think with due propriety it may be further added that the evidence has been read with care, and, had the question been directly presented, we do not consider the case one justifying a disturbance here of the ruling of the trial court in denying the motion. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

The several rulings of the court below have been duly examined, with the result we find no error to reverse.

Let the judgment, therefore, stand affirmed.

Affirmed.

All the Justices concur.