BOWEN, Judge.
Rose Linda Wilburn was convicted of child abuse in violation of Alabama Code 1975, § 26-15-2, and was sentenced to five years’ imprisonment. Four issues are presented on this appeal from that conviction.
I
The defendant contends that the prosecutor should not have been permitted to cross-examine her about her “cohabitating with someone.”
The defendant was convicted of abusing her four-year-old son.
The defendant testified that she had been married once and that Thomas Wilburn was the father of two of her three children. She refused to reveal the identity of the victim’s father, which the State sought to prove in order to show the motive for the child abuse.
On cross-examination of the defendant by the prosecutor, the following occurred:
“Q. Now, are you married right now?
“A. No, sir.
“Q. Are you living with someone?
“A. No, sir.
“Q. You are under oath, Ms. Wilburn, you know that, don’t you?
“A. Yes, sir.
“Q. Are you cohabitating with someone at this time?
“A. No, sir.
*233 “Q. Who is Dan?
“A. Dan is a friend of mine.
“Q. Do you live with him from time to time?
“A. No, sir.
“Q. You don’t spend the night with him?
“A. Only—
“MR. FAMBROUGH [Defense Counsel]: We are going to object to that, Your Honor. Is that material?
“MR. DAVIS [District Attorney]: Judge, yes, it is. It goes to her credibility.
“THE COURT: Overruled.
“Q. Only what now? What was that last answer?
“A. Only since my mother has been here. We had to have a place to stay to be closer to court.
“Q. And you have been staying with Dan?
“A. No, sir, just the last couple of days.
“Q. Is your mother staying there at Dan’s with you?
“A.. Yes, sir.”
The prosecutor should not have been allowed to cross-examine the defendant about whether or not she was “cohabitat-ing with someone” in an effort to impeach her credibility.
The credibility of a witness may not be impeached by evidence of the witness’s bad character for chastity and virtue. Swint v. State, 154 Ala. 46, 45 So. 901, 902 (1908). “Want of chastity cannot be singled out and made a special ground for impeaching the character of a witness for truth and veracity.” Spicer v. State, 105 Ala. 123, 16 So. 706, 707 (1894). See also Norris v. State, 229 Ala. 226, 238, 156 So. 556 (1934), reversed on other grounds, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935) (“Objections of the state to questions seeking to show adulterous relations on the part of the prosecutrix with certain named individuals ... were properly sustained.”); Crawford v. State, 112 Ala. 1, 21 So. 214, 219 (1896) (Evidence of illicit relations between two of the State’s witnesses is not admissible to discredit them.). “A witness may not be impeached by inquiry into his personal misconduct.” Tillis v. State, 218 Ala. 527, 528, 119 So. 215 (1928). Such conduct is generally immaterial. Reeder v. State, 210 Ala. 114, 116, 97 So. 73 (1923). A witness cannot be discredited by showing particular acts of immorality. Nugent v. State, 18 Ala. 521, 526 (1850). “The rule is well established that it is competent to discredit a witness by attacking his general reputation or character, but particular independent facts cannot be proved for this purpose.” Guy v. State, 20 Ala.App. 374, 376, 102 So. 243 (1924). “Specific delinquencies cannot be shown for the purpose of impeaching a witness.” Cole v. State, 16 Ala.App. 55, 57, 75 So. 261 (1917). “The bad character of a witness cannot be established by proof of particular acts.” Swope v. State, 12 Ala.App. 297, 300, 68 So. 562 (1915).
However, while the prosecutor was permitted to pursue an improper subject of impeachment, this error does not require a reversal of the defendant’s conviction because the evidence established that the defendant was not “cohabiting” with anyone. Not only did the defendant deny any cohabitation, but she was permitted to explain her present living arrangements. More significantly, Dan Kshatrya testified, without objection, that the defendant was staying with her mother at his residence but that she was not staying with him.
“The overruling on an objection to a question not answered by the witness or favorably answered to the objector, is not prejudicial error.” Johnson v. State, 260 Ala. 276, 280, 69 So.2d 854 (1954). “If the questions] laid a predicate for immaterial matter, they were all answered in the negative and no effort was made to contradict her in that respect.” Jacobs v. State, 146 Ala. 103, 42 So. 70, 72 (1906). The comments of the court in Bowen v. State, 217 Ala. 574, 579, 117 So. 204 (1928), are applicable here:
“[T]he negative answer disarmed the question of all possible harmful tendency.... If, as defendant now suggests, these questions were nothing more than an effort to discredit the witness by un *234 justifiable insinuations, we are unable to find in them sufficient ground for a reversal. Intelligent jurors probably estimated them according to their true value.” .
See also Wyrick v. State, 409 So.2d 969, 974 (Ala.Cr.App.1981); Clark v. State, 36 Ala.App. 159, 168, 57 So.2d 375 (1951), reversed on other grounds, 257 Ala. 95, 57 So.2d 384 (1952); King v. State, 32 Ala.App. 134, 135, 22 So.2d 448 (1945); McClendon v. State, 21 Ala.App. 494, 495, 109 So. 526 (1926).
II
After the defendant had been arrested, her child was taken into custody by the St. Clair Department of Human Resources and placed in a foster home until he was returned to the defendant’s custody. Ten days after the return of the child, the child was examined by a physician, who observed new lesions and cigarette burns on the child’s body.
The defendant now contends that the evidence concerning these new injuries constituted improper evidence of subsequent and collateral bad acts not charged in the indictment. Initially, we note that, since this issue was not raised at trial, it has not been preserved for review. Washington v. State, 188 Ala. 101, 66 So. 34, 36 (1914); Harris v. State, 420 So.2d 812, 816 (Ala.Cr.App.1982).
Moreover, even had objection been made, the evidence of the subsequent abuse was admissible under the identity exception to the general rule of exclusion. Ex parte Darby, 516 So.2d 786, 788-89 (Ala.1987). See also Bowden v. State, 538 So.2d 1226 (Ala.1988); C. Gamble, McElroy’s Alabama Evidence, § 69.01(8) (3rd ed. 1977).
Here, the key issue at trial was the identity of the child abuser. The State properly presented evidence that the child was abused while in the defendant’s custody both before and after her arrest. Neelley v. State, 494 So.2d 669, 680 (Ala.Cr.App.1985), affirmed, Ex parte Neelley, 494 So.2d 697 (Ala.1986), cert. denied, Neelley v. Alabama, 480 U.S. 926, 107 S.Ct. 1389, 94 L.Ed.2d 702 (1987); Thomas v. State, 409 So.2d 955, 956-57 (Ala.Cr.App.1981).
HI
The defendant’s motion for a judgment of acquittal was properly denied.
The victim testified to the effect that the defendant repeatedly burned him with a cigarette on his legs. The Alabama Child Abuse Act, Alabama Code 1975, § 26-15-1 et seq., does not require the corroboration of the victim’s testimony. His testimony alone presented a jury question on the issue of the defendant’s guilt or innocence.
The victim was five years old at the time of trial. The record shows that the trial judge properly determined that the child was qualified to take a witness’s oath and testify under the principles this Court set out in Roberson v. State, 384 So.2d 864, 866-68 (Ala.Cr.App.), cert. denied, Ex parte Roberson, 384 So.2d 868 (Ala.1980).
Before placing the victim under oath, the trial judge personally examined the child, who indicated that he was going to tell the truth, that if he did not tell the truth he “will have to stand in a corner” and that his mother had told him that if he did not tell the truth he would go to the “bad world.”
During the trial, defense counsel elicited evidence, through the testimony of social worker Melinda Morrow, that, while in the custody of a foster parent, the victim had scratched his face after “being made to sit in the sad seat” or while being made to stand in a corner.
Defense counsel did not object to the victim’s competency until he made it a ground of his motion for a judgment of acquittal at the close of the State’s case. The trial judge responded:
“THE COURT: Well, he knows what happens — what caused him to get put in the corner. And if you believe what he said, I mean, what was alleged to have been said by him about scratching his face because he was in the corner, I would say that would fortify the State’s *235 case with regard to the credibility of his testimony.”
The record shows that the victim understood the “ ‘morality of speaking truthfully.’ ” Roberson, 384 So.2d at 867. We do not find any evidence that the trial judge abused his discretion in determining that the victim was competent to testify as a witness.
IV
The defendant contends that the trial judge erred in denying his motion to introduce into evidence a photograph depicting scratches on the victim’s face. These are the same scratches referred to in Part III above.
In cross-examining the social worker, defense counsel attempted to introduce the photograph into evidence. At that time, the trial judge sustained the State’s objection “subject to changing the ruling if the proper predicate is laid,” and found that a proper predicate had not been laid. Earlier, defense counsel had questioned the victim about the photograph. The child had denied knowing how he got the scratches on his face and denied doing it himself.
Defense counsel made no further effort to introduce the photograph until his redirect examination of the defendant. At that time, he established, through the defendant’s testimony, that the photograph of the defendant and her son had been taken on January 4th, when the defendant came to the courthouse for the grand jury. The defendant testified that her son “[h]ad real severe scratches on his face.”
The trial judge sustained the State’s objection and stated, “[A]t this stage of the proceeding as far as that picture is concerned, it has not been properly identified to add any relevance to the issues in this case, that’s the basis of my ruling. * * * If you show the relevancy of whatever you intend to show by that, I’ll let it in.” Defense counsel responded that he “want[ed] to show how the child treated himself” but did not explain or pursue the matter further. The prosecutor noted that there had been no evidence of any “pattern of self-injury.”
The defendant’s testimony was in substance that her son had told her that the babysitter (who was living with the defendant’s 19-year-old-son) had burned him with cigarettes, and that the child had gotten bitten by chiggers, ants, and mosquitoes and had “just scratched them.”
Before a photograph is admitted into evidence it must be properly verified and it “must tend to prove or disprove some disputed issue, must illustrate or elucidate some relevant fact or must corroborate or disprove some other evidence offered or to be offered.” C. Gamble, McElroy’s Alabama Evidence § 123.03(1) (3rd ed. 1977). “Whether a photograph is admissible is left up to the sound discretion of the trial court and [its] decision will not be reversed except for a showing of abuse.” Harrison v. Woodley Square Apartments, Ltd., 421 So.2d 101, 104 (Ala.1982). Here, we cannot state with any degree of certainty that the photograph of the victim’s self-inflicted scratches to his face tended to prove that the child inflicted different type wounds to his legs and thighs. There was no evidence that the child physically abused himself in the same, or a similar, manner at any other time. The connection between the self-inflicted scratches on the child’s face and the issues of who burned the child’s legs and whether the lesions on the legs were actually burns or merely insect bites is so tenuous and remote that we find no abuse of the trial judge’s discretion in his refusal to admit the photograph.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.