175 So. 371

## PATTERSON v. STATE.

### 8 Div. 757.

Supreme Court of Alabama.

June 14, 1937.

344

Samuel S. Leibowitz and Osmond K. Fraenkel, both of New York City, and C. L. Watts of Huntsville, for appellant.

A. A. Carmichael, Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for the State.

THOMAS, Justice.

The trial and conviction was for the offense of rape.

The appeals on phases of the facts before us are Patterson v. State, 224 Ala. 531, 141 So. 195, 286 U.S. 540, 52 S.Ct. 648, 76 L.Ed. 1278; Powell v. State, 224 Ala. 540, 141 So. 201; Weems & Morris v. State, 224 Ala. 524, 525, 141 So. 215; Patterson v. State, 229 Ala. 270, 156 So. 567; Id., 293 U.S. 554, 55 S.Ct. 347, 79 L.Ed. 656; Norris v. State, 229 Ala. 226, 156 So. 556; Id., 293 U.S. 552, 55 S.Ct. 345, 79 L.Ed. 655.

For convenience, we will follow the order of discussion employed by counsel, of the several questions for decision.

Did the court below err in denying appellant-defendant's petition for removal to the United States District Court, under section 31 of the United States Judicial Code (28 U.S.C.A. § 74) and section 32 of the United States Judicial Code (28 U.S.C.A. § 75)? These statutes are as follows:

"§ 74. (Judicial Code, section 31.) Same; causes against persons denied civil rights. When any civil suit or criminal prosecution is commenced in any State court, for any cause whatsoever, against any person who is denied or can not enforce in the judicial tribunals of the State, or in the part of the State where such suit or prosecution is pending, any right secured to him by any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction of the United States, or against any officer, civil or military, or other person, for any arrest or imprisonment or other trespasses or wrongs made or committed by virtue of or under color of authority derived from any law providing for equal rights as aforesaid, or for refusing to do any act on the ground that it would be inconsistent with such law, such suit or prosecution may, upon the petition of such defendant, filed in said State court at any time before the trial or final hearing of the cause, stating the facts and verified by oath, be removed for trial into the next district court to be held in the district where it is pending. Upon the filing of such pe-

tition all further proceedings in the State courts shall cease, and shall not be resumed except as hereinafter provided. But all bail and other security given in such suit or prosecution shall continue in like force and effect as if the same had proceeded to final judgment and execution in the State court. It shall be the duty of the clerk of the State court to furnish such defendant, petitioning for a removal, copies of said process against him, and of all pleadings, depositions, testimony, and other proceedings in the case. If such copies are filed by said petitioner in the district court on the first day of its session, the cause shall proceed therein in the same manner as if it had been brought there by original process; and if the said clerk refuses or neglects to furnish such copies, the petitioner may thereupon docket the case in the district court, and the said court shall then have jurisdiction therein, and may, upon proof of such refusal or neglect of said clerk, and upon reasonable notice to the plaintiff, require the plaintiff to file a declaration, petition, or complaint in the cause; and, in case of his default, may order a nonsuit, and dismiss the case at the costs of the plaintiff, and such dismissal shall be a bar to any further suit touching the matter in controversy. But if, without such refusal or neglect of said clerk to furnish such copies and proof thereof, the petitioner for removal fails to file copies in the district court, as herein provided, a certificate, under the seal of the district court, stating such failure, shall be given, and upon the production thereof in said State court the cause shall proceed therein as if no petition for removal had been filed. (R.S. § 641; Mar. 3, 1911, c. 231, § 31, 36 Stat. 1096.)"

"§ 75 (Judicial Code, section 32.) Same; petitioner in actual custody of state court. When all the acts necessary for the removal of any suit or prosecution, as provided in section 74 of this title, have been performed, and the defendant petitioning for such removal is in actual custody on process issued by said State court, it shall be the duty of the clerk of said district court to issue a writ of habeas corpus cum causa, and of the marshal, by virtue of said writ, to take the body of the defendant into his custody, to be dealt with in said district court according to law and the orders of said court, or, in vacation, of any judge thereof; and the marshall shall file with or deliver to the clerk of said State court a duplicate copy of said writ. (R.S.

§ 642; Mar. 3, 1911, c. 231, § 32, 36 Stat. 1097.)"

The provisions for a change of venue in criminal causes, contained in section 5581 of the Code of Alabama of 1923, are as follows: "5581. Removal to nearest county, and but once.—The trial must be removed to the nearest county free from exception, and can be removed but once."

 The decisions are that on an application for a change of venue, and on granting the motion for removal, the trial court must decide what is the nearest county free from objection. Ex parte Benj. F. Hodges, 59 Ala. 305. When an order for removal or change of venue is made, the jurisdiction of the county wherein the indictment is returned to try defendant ceases, and the jurisdiction of the county to which the case is removed commences. Ex parte Lancaster, 206 Ala. 60, 89 So. 721, 18 A.L.R. 706. The question then is, under the rules that obtain, has the state court the duty or right to determine the sufficiency of the petition and the facts authorizing removal to another jurisdiction, or change of venue?

 In Ex parte State of Alabama, 71 Ala. 363, it is declared that a mere application for removal to a federal court does not oust the state jurisdiction. It is only when the application is in proper form and conforms to the act of Congress, authorizing the removal, and states "facts bringing the case within the provisions of the act" that it becomes the duty of the state court to yield obedience to the paramount law and cease to exercise its original jurisdiction in the premises. In State v. Sullivan, et al., 110 N.C. 513, 14 S.E. 796, the observation is made of the federal statute (Revised Statutes, § 643 [now Jud.Code § 33, as amended, 28 U.S.C.A. § 76]) that the jurisdiction of the state court over the person and the subject-matter enumerated in the Act of Congress is not ousted by the filing of a petition for removal in the circuit court. That result follows only when the petition setting forth the facts required by the statute has been duly filed and the appropriate return has been issued and made known to the state court.

 In Ex parte J. Madison Wells et al., 29 Fed.Cas. 633, No. 17,386, 3 Woods, 128, it is said that the state court surely is not forced to shut its eyes and yield to every application that comes to it (for removal). Though removal is a matter of right and not of favor, yet the court must have the right

to see whether the application to remove comes within the meaning of the law. This latter reference applies to the right and power of the state court to examine and ascertain the compliance with federal statute. Virginia v. Rives, 100 U.S. 313, 316, 25 L.Ed. 667.

In Virginia v. Paul, 148 U.S. 107, 116, 13 S.Ct. 536, 37 L.Ed. 386, it is recognized that the petition must show a sufficient ground for removal and the case of Virginia v. Rives, supra, is cited. In that decision it is declared if the petition (for removal) filed in the state court before the trial and duly verified by the oaths of the defendants, exhibited a sufficient ground· for removal of the prosecutions into the Circuit Court of the United States, "they were in legal effect thus removed, and the writ of habeas corpus was properly issued."

In the case of Commonwealth v. Millen, 289 Mass. 441, 194 N.E. 463, 476 (certiorari denied, 295 U.S. 765, 55 S.Ct. 924, 79 L.Ed. 1706) it is said:

"There was no error in denying the defendants' petitions, and in ordering the trial to proceed. It is only when state legislation can be shown to exist which violates the constitutional guaranty of the equal protection of the laws and interferes with a party's right of defence that he can have his cause removed to the federal court under section 31 of the Judicial Code. Virginia v. Rives, 100 U.S. 313, 332, 333, 25 L.Ed. 667; Gibson v. Mississippi, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075; Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633, 5 Ann.Cas. 692. The mere presentation of a petition for the removal of a criminal cause from the state court to the federal court is not sufficient to arrest the jurisdiction of the state court, and that court still has the right to examine into the sufficiency of the petition. * * *

"Furthermore, the formal and orderly process required by section 32 of the Judicial Code, where the state court refuses to recognize the defendant's right to remove the cause, was not complied with. The jurisdiction of the state court is transferred to the federal court only in case the suit is a removable one and the proceedings to remove it are regular enough to be effective. That the proceedings to remove the cause are regular is not sufficient to transfer the jurisdiction from the state court to the federal court."

It follows that the trial court did not err in examining the petition for removal to determine whether or not there was sufficient cause to remove the case to the federal court.

What then of the correctness of the trial court's judgment in determining that the petition filed did not present such a case as came within the purview of section 31 of the United States Judicial Code? This depends on whether or not the appellant was denied an equal right by virtue of section 5581 of the Code of Alabama, providing that there shall be only one change of venue. It is hardly necessary to observe that the statute applies to all persons alike, without regard to race, color, or previous condition of servitude.

The general rule is stated that the right of a change of venue in criminal cases is provided by statute, and the extent and manner of its exercise is of legislative declaration. Stamp v. Commonwealth, 200 Ky. 133, 253 S.W. 242; State v. Backus, 165 Wis. 179, 161 N.W. 759.

Adverting to the rule in this jurisdiction, section 6 of the Constitution states that by general law, the Legislature may provide for a change of venue at the instance of the defendant in all prosecutions by indictment, and the application for such change of venue may be heard and determined without the personal presence of the defendant applying therefor; provided, the defendant is imprisoned in jail or in some legal place of confinement. Thus the Constitution ·does not expressly guarantee to a defendant the right to a change of venue, but leaves the question to the discretion of the Legislature.

The United States Supreme Court has determined that in order for a petitioner to come within the provisions of section 31 of the Judicial Code, he must be deprived of an equal civil right by virtue of the constitutional or statutory provisions administered or applied.

In Virginia v. Rives, 100 U.S. 313, 320, 25 L.Ed. 667, the court said:

"The petition of the two colored men for the removal of their case into the Federal court does not appear to have made any case for removal, if we are correct in our reading of the act of Congress. It did not assert, nor is it claimed now, that the Constitution or laws of Virginia denied to them any civil right, or stood in the way of their enforcing the equal protection of the laws. The law made no discrimination against

them because of their color, nor any discrimination at all. The complaint is that there were no colored men in the jury that indicted them, nor in the petit jury summoned to try them. The petition expressly admitted that by the laws of the State all male citizens twenty-one years of age and not over sixty, who are entitled to vote and hold office under the Constitution and laws thereof, are made liable to serve as jurors. And it affirms (what is undoubtedly true) that this law allows the right, as well as requires the duty, of the race to which the petitioners belong to serve as jurors. It does not exclude colored citizens.

"Now, conceding as we do, and as we endeavored to maintain in the case of Strauder v. West Virginia [100 U.S. 303, 25 L.Ed. 664, just decided], that discrimination by law against the colored race, because of their color, in the selection of jurors, is a denial of the equal protection of the laws to a negro when he is put upon trial for an alleged criminal offence against a State, the laws of Virginia make no such discrimination. If, as was alleged in the argument, though it does not appear in the petition or record, the officer to whom was intrusted the selection of the persons from whom the juries for the indictment and trial of the petitioners were drawn, disregarding the statute of the State, confined his selection to white persons, and refused to select any persons of the colored race, solely because of their color, his action was a gross violation of the spirit of the State's laws, as well as of the act of Congress of March 1, 1875 [18 Stat. at L., 335], which prohibits and punishes such discrimination. He made himself liable to punishment at the instance of the State and under the laws of the United States. In one sense, indeed, his act was the act of the State, and was prohibited by the constitutional amendment. But inasmuch as it was a criminal misuse of the State law, it cannot be said to have been such a 'denial or disability to enforce in the judicial tribunals of the State' the rights of colored men, as is contemplated by the removal act. Section 641. It is to be observed that act gives the right of removal only to a person 'who is denied, or cannot enforce, in the judicial tribunals of the State his equal civil rights.' And this is to appear before trial. When a statute of the State denies his right, or interposes a bar to his enforcing it, in the judicial tribunals, the presumption is fair that they will be controlled by it in their decisions; and in such

a case a defendant may affirm on oath what is necessary for a removal. Such a case is clearly within the provisions of section 641. But when a subordinate officer of the State, in violation of State law, undertakes to deprive an accused party of a right which the statute law accords to him, as in the case at bar, it can hardly be said that he is denied, or cannot enforce, 'in the judicial tribunals of the State' the rights which belong to him. In such a case it ought to be presumed the court will redress the wrong. If the accused is deprived of the right, the final and practical denial will be in the judicial tribunal which tries the case, after the trial has commenced. If, as in this case, the subordinate officer whose duty it is to select jurors fails to discharge that duty in the true spirit of the law; if he excludes all colored men solely because they are colored; or if the sheriff to whom a venire is given, composed of both white and colored citizens, neglects to summon the colored jurors only because they are colored; or if a clerk whose duty it is to take the twelve names from the box rejects all the colored jurors for the same reason,—it can with no propriety be said the defendant's right is denied by the State and cannot be enforced in the judicial tribunals. The court will correct the wrong, will quash the indictment or the panel, or, if not, the error will be corrected in a superior court. We cannot think such cases are within the provisions of section 641. Denials of equal rights in the action of the judicial tribunals of the State are left to the revisory powers of this court. * *

"Nor did the refusal of the court and of the counsel for the prosecution to allow a modification of the venire, by which one-third of the jury, or a portion of it, should be composed of persons of the petitioners' own race, amount to any denial of a right secured to them by any law providing for the equal civil rights of citizens of the United States. The privilege for which they moved, and which they also asked from the prosecution, was not a right given or secured to them, or to any person, by the law of the State, or by any act of Congress, or by the Fourteenth Amendment of the Constitution. It is a right to which every colored man is entitled, that, in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race, and no discrimination against them because of their color. But this is a different thing from the right which it is asserted was denied to the petitioners by the State court, viz. a right to

have the jury composed in part of colored men. A mixed jury in a particular case is not essential to the equal protection of the laws, and the right to it is not given by any law of Virginia, or by any Federal statute. It is not, therefore, guaranteed by the Fourteenth Amendment, or within the purview of section 641."

In Gibson v. Mississippi, 162 U.S. 565, 582, 16 S.Ct. 904, 907, 40 L.Ed. 1075, 1078, the following observation was made by the court: "In view of this decision, it is clear that the accused in the present case was not entitled to have the case removed into the circuit court of the United States, unless he was denied, by the constitution or laws of Mississippi, some of the fundamental rights of life or liberty that were guarantied to other citizens resident in that state. The equal protection of the laws is a right now secured to every person without regard to race, color, or previous condition of servitude; and the denial of such protection by any state is forbidden by the supreme law of the land. These principles are earnestly invoked by counsel for the accused. But they do not support the application for the removal of this case from the state court, in which the indictment was found, for the reason that neither the constitution of Mississippi nor the statutes of that state prescribe any rule for, or mode of procedure in, the trial of criminal cases which is not equally applicable to all citizens of the United States and to all persons within the jurisdiction of the state, without regard to race, color, or previous condition of servitude."

We have indicated that in the case of Commonwealth v. Millen, 289 Mass. 441, 194 N.E. 463, the Supreme Court of the United States reviewed a situation similar to that here presented, and the petition for a writ of certiorari was refused. (295 U.S. 765, 55 S.Ct. 924, 79 L.Ed. 1706).

The case of Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 396, 50 L.Ed. 633, 5 Ann. Cas. 692, is a leading case on the subject; this is indicated in the opinions from which we have quoted. It is there said by Mr. Justice Harlan: "The question as to the scope of § 641 of the Revised Statute again arose in the subsequent cases of Neal v. Delaware, 103 U.S. 370, 386, 26 L.Ed. 567, 570; Bush v. Kentucky, 107 U.S. 110, 116, 1 S.Ct. 625, 27 L. Ed. 354, 356; Gibson v. Mississippi, 162 U. S. 565, 581, 584, 16 S.Ct. 904, 40 L.Ed. 1075, 1078, 1079. * * * In each of these cases it was distinctly adjudged, in harmony with previous cases, that the words in § 641—'who is denied or cannot enforce in the judicial tribunals of the state, or in the part of the state where such suit or prosecution is pending, any right secured to him by any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction of the United States'—did not give the right of removal, unless the Constitution or the laws of the state in which the criminal prosecution was pending denied or prevented the enforcement in the judicial tribunals of such state of the equal rights of the accused as secured by any law of the United States. Those cases, as did the prior ones, expressly held that there was no right of removal under § 641, where the alleged discrimination against the accused, in respect of his equal rights, was due to the illegal or corrupt acts of administrative officers, unauthorized by the Constitution or laws of the state, as interpreted by its highest court. For wrongs of that character the remedy, it was held, is in the state court, and ultimately in the power of this court, upon writ of error, to protect any right secured or granted to an accused by the Constitution or laws of the United States, and which has been denied to him in the highest court of the state in which the decision, in respect of that right, could be had."

■ From all the cases, it will be noted, that the Fourteenth Amendment to the Constitution of the United States is broader than the provisions of section 641, Revised Statutes. Ex parte Virginia (Virginia v. Rives), 100 U.S. 313, 25 L.Ed. 667.

■ The statute of Alabama for change of venue, of which appellant complains, did not operate to deprive him of a civil right given to members of any class, and was not prejudicial to him by reason of his race, color, or previous condition of servitude. Petitioner does not point to any constitutional or statutory provision which in any way deprives him of a civil right given to others, and hence we are of opinion that he was not entitled to have his cause removed to the federal court.

■ We hold that section 5581 of the Code Ala.1923 does not offend any provision of the State or Federal Constitutions; that section 31 of the Judicial Code of the United States (28 U.S.C.A. § 74), providing for removal of causes to the federal court in the district where the civil rights are denied,

did not authorize removal of defendant's cause under the petition and proceedings had in the circuit court of Morgan county, Ala., where defendant-appellee was tried and convicted, and from which judgment the present appeal is prosecuted to this court.

■ Appellant next contends that the trial court erred in sustaining objections to the following questions:

"I will ask you to state to the Jury whether or not during your stay in Chattanooga you were in company with Victoria Price and Ruby Bates substantially the entire time you were there? * * *

"Now, I want to ask you if you know of your own knowledge whether Victoria Price, while in Chattanooga, had sexual intercourse with a man? * * *

"I will ask you whether or not Orville Gilley, after you met him in Chattanooga, remained substantially all the time with you and Victoria Price and Ruby Bates."

This contention was answered by the former appeal of Morris v. State, 229 Ala. 226, at page 238, 156 So. 556, 565, when Mr. Justice Gardner said for this court:

"Objections of the state to questions seeking to show adulterous relations on the part of the prosecutrix with certain named individuals the night before the commission of the alleged crime, or even the night before leaving Huntsville, were properly sustained. All of this bore no relevancy to any issue in the case under the rule firmly established in this jurisdiction. Story v. State, 178 Ala. 98, 59 So. 480; Weems v. State, 224 Ala. 524, 141 So. 215. Nor is there anything in this record, argued as existing in the companion case of Patterson v. State [229 Ala. 270, 156 So. 567], which, upon any theory, would render this evidence admissible.

"Some other questions to prosecutrix on cross-examination were disallowed. They related to her movements in Chattanooga, whom she saw, to whom she spoke, and where she spent the night, or closely related matters, all of which, it does not appear, would be relevant to the charge of rape here considered. Though not to be too narrowly restricted (Mitchell v. Birmingham News Co., 223 Ala. 568, 137 So. 422; Pearce v. State, 226 Ala. 436, 147 So. 617), yet the extent of cross-examination is a matter resting largely in the discretion of the trial court (Doss v. State, 224 Ala. 90, 139 So. 290; Peterson v. State, 227 Ala. 361, 150 So. 156; Alabama Power Co. v. Berry, 222 Ala. 20, 130 So. 541), and we find no abuse of that discretion in the instant case."

■ Appellant contends that inasmuch as there was evidence of semen found in the vaginal canal of Mrs. Price, defendant should have been allowed to show that she had had intercourse with other persons than defendant, prior to the date of the alleged attack of Mrs. Price. The facts in the Norris Case were practically the same as the facts in the case now for consideration. The State did not introduce evidence tending to show the presence of semen in the vagina of the prosecutrix. Defendant offered Dr. Bridges who testified to such fact of semen in Mrs. Price's vagina, and upon this fact appellant Morris contended there was error not to allow the questions. This court will recognize a distinction in cases where the presence of semen is shown by the State, and where such fact is brought out by the defendant. This was the distinction pointed out by Mr. Justice Dargan, in Nugent v. State, 18 Ala. 521, as follows: "We think the court clearly mistook the law, in refusing to permit the accused to prove that before, and near the time of committing the alleged offence, other persons had carnal knowledge of the girl, upon whom the offence is charged to have been committed, inasmuch as the State had previously proved that she was infected with venereal disease, and the parts were bruised and inflamed. The existence of the disease and the injury to her person were facts corroborative of the testimony of the girl, for they tended strongly to show that some one had attempted to have sexual intercourse with her, and it was certainly competent for the prisoner to show that these facts could have existed consistently with his innocence; for such proof would to some extent weaken the presumption of guilt, that would result from the existence of the disease and the injuries to her person. It is true that these acts of sexual intercourse with others might have been rejected, if they had been offered for the mere purpose of discrediting the testimony of the girl, independent of all other evidence."

This is the rule also in other jurisdictions. State v. Menard, 169 La. 1197, 126 So. 921.

In the instant case, Dr. Bridges, who had testified on a former trial for the defendant, did not appear at this trial. His testimony was available in the form of stenographer's notes. The defendant did not ask for a continuance on account of the absence of Dr. Bridges. The rule as to whether the

State will be called upon to allow the admission of testimony given on a former trial by an absent witness for a defendant is addressed to the sound discretion of the court. DeArman v. State, 77 Ala. 10. The trial court ruled in order for the defendant to take advantage of the testimony given at the former trial, it would be necessary that the whole of such absent witness's testimony be introduced in evidence. This is shown by the following extracts from the record:

"The defendant here offered in evidence the former testimony of the witness, Dr. Bridges, who was called and examined as a witness for the defendant on the former trial of the defendant, Haywood Patterson, before Judge Callahan, at Decatur, Alabama.

"Mr. Knight: Mr. Leibowitz, if you are not reading the whole thing, please indicate with a pencil what you have left out.

"The Court: Gentlemen, I am going to require the defendant, if they want that record in here, to offer the whole record and read such parts as you want.

"Mr. Knight: That is what we want.

"Mr. Leibowitz: What is the court's instructions?

"The Court: I am holding, when you offer that record, you are offering the testimony of Doctor Bridges on a former trial, and you can read from that record such parts as you want.

"Mr. Leibowitz: If Your Honor please, we are offering this testimony to contradict Victoria Price.

"The Court: I understand.

"Mr. Leibowitz: That is all we are offering it for.

"The Court: I am requiring you to offer the whole of his testimony, and you can read such parts as you wish.

"Mr. Leibowitz: I am not offering the whole of the testimony in evidence. I am offering the testimony, as we see it, that contradicts the claims of Victoria Price, and if the State wants to offer, subject to objection, any other part, they can offer it.

"The Court: I can't do that.

"Mr. Leibowitz: Except.

"The Court: I thought I had it plain at the start it was your testimony, and you were offering it, and you could read such parts as you wanted to.

"Thereupon Mr. Leibowitz read from the testimony of Doctor Bridges given on the former trial of the case: * * *."

The defendant read portions of the testimony showing the presence of semen, and the State then asked: "I will ask you this question: * * * this was a question asked by me to Doctor Bridges, * * * 'from your examination of Victoria Price's vaginal canal, in your opinion, was the intercourse recent?' The answer was, 'I would say that it was recent, but I wouldn't put the hour or minute on it. I couldn't do that.'"

It is thus apparent that the question or fact of the presence of semen in the vagina of Mrs. Price was injected into the case by the defendant and not by the state. The rule laid down in Nugent v. State, 18 Ala. 521, and Norris v. State, 229 Ala. 226, 156 So. 556, has application to the instant question, and the rulings of the trial court were free from error in disallowing the answers to the questions we have indicated on the foregoing authorities. Moreover, the matter in question was not in direct conflict with the answer of Bridges.

 We find no error of the trial court in rulings excluding evidence of alleged bias on the part of the prosecutrix as being in jail, and cooking there, at the same time with Gilley, Carter, et al., and traveling with them on trains at the time of the alleged rape, and theretofore to Chattanooga.

The cross-examination of a witness rests largely in the discretion of a trial court. Peterson v. State, 227 Ala. 361, 150 So. 156; Norris v. State, supra; Birmingham Ry. L. & P. Co. v. Lipscomb, 198 Ala. 653, 73 So. 962; Cox v. State, 162 Ala. 66, 50 So. 398. The evidence disclosed that Victoria Price had known the witness for more than a month, and this was sufficient on the question of intent or bias. Ex parte State (Johnson v. State), 199 Ala. 255, 74 So. 366. The cases cited from this court, relative to bias, show the following questions were asked in the trial of the causes: Ex parte Morrow, 210 Ala. 63, 97 So. 108, "You fell out with this man and his whole family after you were arrested for having a still?" and Motley v. State, 207 Ala. 640, 93 So. 508, 509, 27 A.L.R. 276 (the record showing illicit relations and a recent "falling out") "mad with this man because he would not come back?" The instant questions directed to defendant were not of this character or nature and were within the discretion of the court.

 The rules of law as to aiding, abetting, and co-operating to commit a crime are well understood and need not be repeat-

352

ed. National Park Bank v. Louisville & N. R. R. Co., 199 Ala. 192, 74 So. 69. Where, by agreement, two or more persons enter upon the commission of a criminal offense, and it is carried out, each party is guilty. Section 3196, Code of Alabama, 1923; Sankey v. State, 128 Ala. 51, 29 So. 578; McMahan v. State, 168 Ala. 70, 53 So. 89; Montgomery v. State, 169 Ala. 12, 53 So. 991; Jones v. State, 174 Ala. 53, 57 So. 31; National Park Bank v. L. & N. R. R. Co., supra. There was evidence as to conspiracy, the reasonable tendencies of which authorized and supported the instructions of the court as to aiding and abetting a conspiracy. The exceptions taken by counsel to such matters in the charge were that the same was abstract under the indictment charging rape. Conceding that the exception was sufficient under the rule that obtains (Ex parte Cowart, 201 Ala. 55, 77 So. 349), we have indicated that the instructions were not abstract, and not denial of due process. De Jonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278.

 We have examined the suggestions of error because of remarks of the court and find no reversible error. It is the rule in this jurisdiction that the granting or refusal of motions to grant additional time usually rests on the sound discretion of the trial court; and when there is no abuse of that discretion, no error to reversal intervenes.

 Appellant moved for a mistrial because of the reply of the court to appellant's counsel asking for delay. The counsel said: "We renew our application now to prepare a showing for Doctor Bridges."

The court declined, saying: "I am not going to be tampered with in that fashion."

The court instructed the jury that, "Gentlemen of the jury, that has got nothing to do with this case. You, I assume, have got sense enough to pass on this case from the evidence and not what transpires between counsel on one side and the court on the other. These motions that are made, they have got a right to make them, and the court passes on them, and it doesn't affect— it ought not to affect the trial of this case,— got nothing to do with it. Pay no attention to it.

"If that word is offensive to you, I will withdraw it."

If there was error it was thus eradicated by this action of the trial court in its instruction to the jury, as above set out.

The cases cited by appellant are different in prejudicial effect. In Griffin v. State, 90 Ala. 596, 8 So. 670, the remark was upon the weight of the evidence; in Moulton v. State, 199 Ala. 411, 74 So. 454, the general atmosphere of the case was that of race prejudice, and the court exhibited impatience against appellant's counsel. Powell v. State, 20 Ala.App. 606, 104 So. 551. In Burns v. State, 226 Ala. 117, 145 So. 436, and Daggett v. Boomer, 210 Ala. 673, 99 So. 181, the remark of the court reflected on the credibility of defendant's witness, as to a material matter of evidence.

In the instant case, the remark of the court was well understood, as the word was employed and used in common parlance. It was in effect that counsel may not unnecessarily consume the time of the court with matters that had theretofore been the subject of adverse rulings. That is to say, the court meant, by the expression employed, and to which exception was taken, that counsel would not be permitted to further delay the court and the trial on a question theretofore concluded by rulings invoked by counsel for the defendant.

When the record is examined, as has been done, we find no reversible error.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.