Leslie IRVIN, Petitioner-Appellant,

v.

Alfred F. DOWD, Warden, Respondent-Appellee.

No. 12080.

United States Court of Appeals
Seventh Circuit.

Oct. 23, 1959.

Rehearing Denied Nov. 12, 1959.

Duffy, Circuit Judge, dissented in part.

Theodore Lockyear, Jr., James D. Lopp, Evansville, Ind., James D. Nafe, South Bend, Ind., for appellant.

Edwin K. Steers, Atty. Gen., of Indiana, Richard M. Givan, Deputy Atty. Gen., of Indiana, for appellee.

Before DUFFY, SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

We heretofore, Irvin v. Dowd, 7 Cir., 251 F.2d 548, affirmed an order of the district court dismissing a petition for writ of habeas corpus filed by petitioner, who is also referred to herein as "defend-

ant".[1] Subsequently our judgment was reversed and this case was remanded to this court, 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed. 900. The federal Supreme Court held, 359 U.S. at page 405, 79 S.Ct. 825, that the state Supreme Court decided petitioner's federal constitutional claim. In remanding, 359 U.S. at page 407, 79 S.Ct. 825, the court left it to us to decide the merits of that claim or to remand to the district court for further consideration thereof. We have determined to decide the merits of that claim.

As stated in his brief, defendant's constitutional claim of denial of due process of law is based principally upon his allegations of bias and prejudice in the community where his trial occurred and a preconceived opinion of the trial jurors that defendant was guilty.

As the Supreme Court said, 359 U.S., at page 396, 79 S.Ct. at page 827:

"* * * Six murders were committed in the vicinity of Evansville, Indiana, two in December 1954, and four in March 1955. The crimes, extensively covered by news media in the locality, aroused great excitement and indignation throughout Vanderburgh County, where Evansville is located, and adjoining Gibson County, a rural county of approximately 30,000 inhabitants. The petitioner was arrested on April 8, 1955. Shortly thereafter, the Prosecutor of Vanderburgh County and Evansville police officials issued press releases, which were intensively publicized, stating that the petitioner had confessed to the six murders. The Vanderburgh County Grand Jury soon indicted the petitioner for the murder which resulted in his conviction. This was the murder of Whitney Wesley Kerr allegedly committed in Vanderburgh County on December 23, 1954. Counsel appointed to defend petitioner immediately sought a change of venue from Vanderburgh County, which was granted, but to adjoining Gibson County. Alleging that the widespread and inflammatory publicity had also highly prejudiced the inhabitants of Gibson County against the petitioner, counsel, on October 29, 1955, sought another change of venue, from Gibson County to a county sufficiently removed from the Evansville locality that a fair trial would not be prejudiced. The motion was denied, apparently because the pertinent Indiana statute allows only a single change of venue."

■■■ 1. It cannot be denied that it was the duty of the state of Indiana to apprehend and punish the person who perpetrated the aforesaid murders. Upon a state there rests no more sacred duty than the protection of the lives of its citizens from criminal attack. At the same time the state owes a duty to any person charged with such crimes to afford him a fair trial as required by the federal constitution. What is a fair trial depends upon the circumstances existing at and prior to the trial. An accused's right to a fair trial is coexistent with the right of law-abiding citizens to lawful protection by their government. It is not surprising that, the more extensive the news coverage of a crime and the more wanton and unjustified the crime itself, the greater and more extensive is the indignation of citizens. Such indignation, varying in its degree according to the violence of the crime, and geographically extensive with the area of news distribution, undoubtedly causes many people to form impressions or beliefs as to the guilt or innocence of suspected or indicted persons. In these days of widely effective and thorough news distributing instrumentalities, such as the telephone, newspaper, radio and television, as well as rapid travel of persons by automobiles, trains and airplanes, hardly a person anywhere in a state, or in fact in the United States, is long ignorant of the details of crimes committed in any state (or in this country), unless he be completely mentally incompetent or

---

1. For the opinion of the district court, see 153 F.Supp. 531.

is in solitary confinement in a jail. In fact, it may well be that into the latter place the grapevine reaches. We no longer live in a day when what happened in the next county was learned only by conversation with a traveling man or a brakeman on the way freight train. It is into this modern society with facilities for quick and broad news coverage that a person who commits six murders projects himself. When apprehended, he is entitled to a fair trial and is to be accorded due process of law, according to the existing circumstances.

■ Our problem in its last analysis is whether the general resentment of a people following the publication by news distributing media of information in regard to a series of murders may be relied upon to prevent the state from prosecuting a person indicted for these crimes, even though his trial be held before an unbiased judge and a jury is selected in accordance with established principles applicable to such a case. If the state is so prevented from trying such a person, it means that the commission within a state of a multiplicity of criminal acts, followed by the usual publicity, actually immunizes the offender from prosecution. We reject such a conclusion as the law of this circuit.

There was undoubtedly a prejudice against the person or persons who committed the series of murders, including that of Whitney Leslie Kerr on December 23, 1954 for which defendant was indicted. It was publicly announced that defendant had confessed that killing and five other murders.

There is no contention by defendant that the alleged bias and prejudice in the community affected the judge and interfered with his presiding as a fair jurist or that perjured evidence was produced against defendant at the trial. It is only in the jury box that counsel for defendant professes to find some effect of community prejudice damaging to defendant. It is true that some jurors, when questioned on their *voir dire,* admitted a preconceived opinion that he was guilty. History shows that this is not an unprecedented situation. Accordingly it has been met by the law. Usually there is a pertinent statute, such as that in effect in Indiana, § 9–1504, Burns' Indiana Statutes, Annotated, which reads:

"Challenges for cause.—The following shall be good causes for challenge to any person called as a juror in any criminal trial:

\* \* \* \* \* \*

"Second. That he has formed or expressed an opinion as to the guilt or innocence of the defendant. But if a person called as a juror states that he has formed or expressed an opinion as to the guilt or innocence of the defendant, the court or the parties shall thereupon proceed to examine such juror on oath as to the ground of such opinion; and if it appears to have been founded upon reading newspaper statements, communications, comments or reports, or upon rumors or hearsay, and not upon conversation with witnesses of the transaction, or reading reports of their testimony, or hearing them testify, and the juror states on oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case."

The record reveals that the trial judge applied this act in this case. With painstaking care, the court, in asking questions of jurors expressing an opinion as to the guilt or innocence of defendant, founded upon reading newspaper statements, communications, comments or reports, or upon rumors or hearsay, required each such juror to state on oath whether he felt able, notwithstanding such opinion, to render an impartial verdict upon the law and evidence. Several of those who answered in the affirmative were accepted upon the trial jury. Defendant now seeks to have us determine, as a matter of federal constitutional law,

that this action by the trial court deprived defendant of a fair trial.

We have no right to question the intelligence, the truthfulness or the sincerity of these jurors, whose impartiality to render a verdict upon the law and the evidence was, after examination, determined to the trial judge's satisfaction, in the manner provided by the Indiana act.

A careful reading of the entire record convinces us that the jury which tried defendant was properly qualified as a fair and impartial fact-finding body.

In Reynolds v. United States, 98 U.S. 145, 155, 25 L.Ed. 244, the court said:

" * * * The theory of the law is that a juror who has formed an opinion cannot be impartial. Every opinion which he may entertain need not necessarily have that effect. In these days of newspaper enterprise and universal education, every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits. It is clear, therefore, that upon the trial of the issue of fact raised by a challenge for such cause the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. * * *."

In Hopt v. People of Utah, 120 U.S. 430, 434, 7 S.Ct. 614, 30 L.Ed. 708, a juror who formed a qualified opinion based upon newspaper accounts, testified that he could try the case according to the evidence given in court. The Supreme Court held that the judgment of the trial court that the juror was competent was conclusive.

In Holt v. United States, 218 U.S. 245, 248, 31 S.Ct. 2, 4, 54 L.Ed. 1021, the court said:

" * * * The finding of the trial court upon the strength of the juryman's opinions and his partiality or impartiality ought not to be set aside by a reviewing court unless the error is manifest * * *."

While our conclusion suffices to dispose of the point now under consideration, we note the existence in New York of a statute dealing with a juror "who doubts his ability to lay aside an opinion or impression formed from newspaper reading or otherwise, or to render an impartial verdict upon the evidence, uninfluenced by any such opinion or impression * * *". People v. Buchalter, 289 N.Y. 181, 45 N.E.2d 225, 245. When the case reached the United States Supreme Court, Buchalter v. People of State of New York, 319 U.S. 427, at page 430, 63 S.Ct. 1129, at page 1131, 87 L.Ed. 1492, the court said:

"The petitioners assert that, in view of unfair and lurid newspaper publicity, it was impossible to obtain an impartial jury in the county of trial, and that the rulings of the court denying a change of venue, and on challenges to prospective jurors, resulted in the impanelling of a jury affected with bias. We have examined the record and are unable, as the court below was, to conclude that a convincing showing of actual bias on the part of the jury which tried the defendants is established. Though the statute governing the selection of the jurors and the court's rulings on challenges are asserted to have worked injustice in the impanelling of a jury, *such assertion raises no due process question* requiring review by this court." (Italics supplied.)

2. During his trial defendant made several motions for continuance based

upon what he described as bias and prejudice against him in the community. These motions were denied and he insists that such action violated due process of law. He reasons that "it is difficult to predict what would have happened had this cause been continued until a later date", and "it is difficult to say whether it would have been again necessary for Petitioner-Appellant to have sought an additional continuance, or whether, at that time, the bias and prejudice against Petitioner-Appellant would have subsided."

■ When these motions were made the trial was under way, the *voir dire* examinations having been commenced on November 14, 1955. This was almost 11 months after the crime had been committed on December 23, 1954, and 8 months after defendant was arrested and made his confession, which had been publicized at the time in Vanderburgh county. It seems to us that there is no more reason to believe that further delay would then have allowed public opinion to subside than that such delay would have incurred greater public feeling aroused by the slowness of the judicial process. In any event the presentation of these motions for continuance required a careful exercise of discretion by the trial judge. His denial of the motions was the exercise of a discretion which will not be disturbed by a reviewing court, in the absence of an abuse thereof. This is recognized by the case which is relied upon by defendant in his brief, Liese v. State, 233 Ind. 250, 254, 118 N.E.2d 731. There was no abuse of discretion by the trial judge in this respect.

3. A change of venue was granted to defendant from Vanderburgh county to Gibson county by authority of § 9–1305, Burns' Indiana Statutes, Annotated, which reads:

"When affidavits for a change of venue are founded upon excitement or prejudice in the county against the defendant, the court, in all cases not punishable by death, may, in its discretion, and in all cases punishable by death, shall grant a change

of venue to the most convenient county. * * * Provided, however, That only one [1] change of venue from the judge and only one [1] change from the county shall be granted."

Defendant repeatedly and unsuccessfully in the Gibson County Circuit Court sought a change of venue from Gibson county.

For the first time, defendant, in his brief filed in this court on appeal from the district court, raises a question as to the constitutionality of this change of venue statute, limiting defendant to but one county change of venue. We might well dispose of this point upon the ground that he had not raised it in the court below. We shall, however, consider the validity of this challenge.

It is significant that defendant cites no federal court decision to sustain his *ipse dixit* contention that the act violates the federal constitution. We have found none.

Various states have similar statutes forbidding county changes of venue after a case has been once removed to another county by change of venue. The United States Supreme Court has denied certiorari to review convictions occurring in the county to which a change of venue was granted, but from which a second change of venue was denied. Patterson v. State, 234 Ala. 342, 175 So. 371, certiorari denied 302 U.S. 733, 58 S.Ct. 121, 82 L.Ed. 567 (rape), and State v. Morgan, 147 La. 205, 84 So. 589, certiorari denied 253 U.S. 498, 40 S.Ct. 588, 64 L.Ed. 1032 (murder).

To the same effect, see People v. Doss, 382 Ill. 307, 46 N.E.2d 984, certiorari denied 320 U.S. 762, 64 S.Ct. 38, 88 L.Ed. 454, rehearing denied 320 U.S. 813, 64 S.Ct. 194, 88 L.Ed. 491, appeal dismissed (criminal contempt), Doss v. Lindsley, 325 U.S. 835, 65 S.Ct. 1202, 89 L.Ed. 1962.

■ We hold § 9–1305 not unconstitutional, as charged.

4. Defendant contends that he challenged certain jurors for cause and made

offers, which were overruled, to prove that they were biased against him, and he was thus prevented from having a fair trial. However, the record shows that the jurors to whom he refers, Hensley, Montgomery and Higginbotham, were fully examined in open court and that defense counsel participated in interrogating these persons.

If it be assumed *arguendo* that, in a situation such as this, where a prospective juror is subjected to interrogation as to his qualifications by counsel for both sides in a criminal case, an offer to prove that he is disqualified can properly be made by defense counsel, the fact remains that the offers appearing in this record are insufficient in that they state mere conclusions without disclosing the alleged facts upon which the conclusions are based. Malone v. State, 176 Ind. 338, 96 N.E. 1, 2.

We find no violation of defendant's federal constitutional rights in respect to the rejection by the trial court of these offers.

5. Defendant also urges that the trial court refused to permit him to introduce evidence in an effort to establish an illegal arrest, unlawful detention and involuntary nature of resultant purported confession, which refusal denied him due process of law. We find that the record actually does not show that the court refused permission to defendant to introduce evidence in this respect. Counsel have seized upon a few words at the end of a lengthy objection made by the defense to a question put on December *16*, 1955 to a police officer, who was a state witness, asking what defendant told the witness about the murder of Kerr on April '12, 1955. The jury was then present. This objection was very lengthy and the latter part embodied a statement of facts, concluding with the words "all of which the defendant now asks leave of court to prove and introduce evidence to prove the same." The court said, "Objection overruled". Actually defendant had on December *14*, 1955, introduced evidence on this point at a preliminary hearing out of the presence of the jury, to support his objection to the introduction of his confession. At that time the court overruled defendant's objection. The trial on December 16, 1955 thereupon proceeded before the jury, during which the state witnesses were cross-examined by defense counsel. Moreover, defendant in the trial before the jury undoubtedly had a right to introduce evidence bearing upon the question of the voluntary nature of his confession. However he offered none. Obviously there is no substance to defendant's contention that he was refused permission to introduce evidence to establish the alleged involuntary nature of his confession.

6. However, relying upon the record, defendant claims that his conviction, based upon a confession obtained by state officers through the use of force, duress and intimidation and while he was being held contrary to Indiana law, violates due process. There was a lengthy trial in the Gibson County Circuit Court. The record now before us shows that the trial was conducted by a judge possessing seemingly inexhaustible patience and exercising meticulous regard for the rights of defendant. We have examined this record carefully and we are convinced of the correctness of the statement made by the Indiana Supreme Court in Irvin v. State, 236 Ind. 384, 393, 139 N.E.2d 898, 902:

"* * * The record reveals, as well as the argument before this court, that appellant had unusually competent counsel furnished at public expense. He was loyally and expertly defended, at every point in the case. 415 specifications of alleged error are presented in the motion for new trial.

"The contention that the evidence was insufficient to support the verdict is not one of the items. A review of the evidence shows it to be both convincing and credible. Appellant was identified as the last person seen with the victim while alive. That occurred just a few minutes prior to the discovery of the

killing. When the state rested appellant offered no evidence in defense. He made a confession. There is nothing to substantiate any claim it was forced or made under fear. Instead it seems appellant made it freely, motivated by a desire to avoid being tried in the state of Kentucky where he was wanted for other charges of multiple murder. It was the appellant who asked for an interview with the prosecuting attorney, Mr. Wever, who had not previously talked to him. Appellant asked if it would be enough if he confessed to the killing. Prosecutor Wever told him, no, that he would have to have other facts to corroborate his admissions.

"Thereafter, in the company of the sheriff he pointed out the place where he threw the gun. A gun was discovered in a ditch at that point. During the time he was in jail, prior to the confessions he made, he was well-treated; permitted to sleep as desired, visited by friends and relatives, and a priest; told he could have an attorney, and was permitted to make telephone calls. He was permitted to order the kind of food he wanted, and on such occasions was served a menu better than that of the average prisoner, which included fried chicken, steak, and various kinds of special dishes.

"It is true the law enforcement officers questioned him at intervals, but this never lasted over an hour or two at any one time, and it did not interfere with any of his natural wants, including sleep. We find nothing to support the claim that the confession was coerced.

"Law enforcement officers should be commended, not condemned, for the attempts to identify and detect the persons who commit a crime, and this includes the arresting and questioning of suspects so long as the questioning is not done in an atmosphere of fear, threats, coercion and oppression. The obtaining of confessions from guilty persons is desirable, and is permissible in the public interest and welfare, so long as it is done under clearly proper circumstance, which appears to be the case here. A careful search of the record fails to show any contradiction of the confessions, and other evidence of his guilt.

"It does not appear from the record and argument had, that the appellant was denied due process of law under the Fourteenth Amendment, or due course of law under the Bill of Rights, Const. art. 1, § 12, or that there was any miscarriage of justice when he was convicted and given the death penalty."

7. Attorneys Wever and Sandusky, state prosecutors, handled the prosecution at the trial. Over objection of defense, Wever testified that he was informed that defendant wanted to see him and hence he had a conversation with the defendant, which he related. He was cross-examined. The court instructed the jury that they were "the sole judges of the facts and credibility of the witnesses", and that they had a right to believe the witnesses they deemed most worthy of credit and disbelieve witnesses whom they believed least worthy of credit; that, in "determining whom you will believe you may consider the nature of the evidence given by them, their interest, bias or prejudice, if any disclosed; * * * and in weighing the testimony and determining the credibility of the witness, it is proper for you to take into consideration all the surrounding circumstances of the witnesses as brought out in the evidence, their interest, if any, in the result of the action, and such other facts appearing in the evidence as will, in your opinion, aid you in determining whom you will believe; * * *."

The testimony of Wever was cumulative to that of other state witnesses. For instance, he, as well as several police officers, testified about locating the gun, which defendant said he used in killing

Kerr, at a place mentioned by defendant in the conversation with Wever. Wever made a closing argument.

Defendant contends that this conduct was unethical and that it violates due process. In a forum where the ethics of Wever's conduct is directly brought in issue by the state of Indiana, it is apparent that a charge of unethical conduct on the foregoing facts would be serious. However, in this case we cannot adjudicate a question of ethics. Certainly the testimony he gave was relevant to the case on trial, and he was a competent witness. As a factual matter the defense offered no evidence to contradict Wever's statement that the defendant wanted to see Wever. Hence it was not a case of the prosecutor seeking evidence by initiating a visit to the defendant. The jury heard a searching cross-examination of Wever by defense counsel and were then instructed by the court as to the right of the jury to consider the interest of a witness in the result of the case, in determining whom the jurors would believe. Therefore, in view of all these circumstances, it is entirely a matter of surmise whether Wever's conduct had a harmful effect upon defendant in the minds of the jury. It is more reasonable to conclude that the jurors would react against the state in view of such conduct by its legal representative. However that may be, the most that can be said is that this conduct was error which did not have such a substantial effect upon the outcome as to strip the trial of due process. This conclusion finds support in Burwell v. Teets, 9 Cir., 245 F.2d 154, 168, certiorari denied 355 U.S. 896, 78 S.Ct. 271, 2 L.Ed.2d 194; People v. Burwell, 44 Cal. 2d 16, 279 P.2d 744, 756, certiorari denied 349 U.S. 936, 75 S.Ct. 788, 99 L.Ed. 1265.

In United States ex rel. Darcy v. Handy, 351 U.S. 454, 462, 76 S.Ct. 965, 970, 100 L.Ed. 1331, the court said:

"Petitioner has been given ample opportunity to prove that he has been denied due process of law. While this Court stands ready to correct violations of constitutional rights, it also holds that 'it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.' Adams v. United States ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L. Ed. 268. See also, Buchalter v. People of State of New York, 319 U.S. 427, 431, 63 S.Ct. 1129, 1131, 87 L. Ed. 1492; Stroble v. California, 343 U.S. 181, 198, 72 S.Ct. 599, 607, 96 L.Ed. 872. Justice Holmes, speaking for a unanimous Court in Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 26, 54 L.Ed. 1021, cautioned that 'If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day.' "

8. As to the contention of defendant that the trial court denied him permission to have a court stenographer report the prosecutor's closing argument to the jury, it is settled practice in the courts of Indiana to not report verbatim closing arguments to juries, unless the trial court so directs. Evidently there was no discrimination against defendant in this respect. Even if there were, it appears that his counsel succeeded in having the trial judge incorporate into the record the precise language used by the prosecutor in his closing argument upon which defendant bases his contention that the prosecutor's conduct was unethical;[2] hence the error, if any, in refusing permission to report the entire argument was harmless.

In any event, even if error occurred in this respect, the due process clause of the Fourteenth Amendment does not enable us to review such error. Buchalter v. People of State of New

2. See 359 U.S. 394, at page 399, 79 S.Ct. 825, 3 L.Ed.2d 900.

York, 319 U.S. 427, 431, 63 S.Ct. 1129, 87 L.Ed. 1492.

For all of the foregoing reasons, we decide that defendant has not sustained his federal constitutional claim that he was convicted in violation of the Fourteenth Amendment. Accordingly, the judgment of the district court is affirmed and the stay of execution heretofore entered herein is vacated.

Affirmed and stay of execution vacated.

DUFFY, Circuit Judge (dissenting in part).

I agree with that part of the majority opinion that Sec. 9–1305, Burns' Indiana Statutes, Annotated—the change of venue statute—is not unconstitutional.

As to the offer of proof by defendant as to jurors Hensley, Johnson, Montgomery and Higginbotham, I agree with the statement in the majority opinion: "We find no violation of defendant's federal constitutional rights in respect to the rejection by the trial court of these offers."

However, I must respectfully dissent from that part of the majority opinion which holds that the defendant herein had a fair trial. It is well established that: "A fair trial in a fair tribunal is a basic requirement of due process. * * *" In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942. In my judgment defendant was not afforded due process of law in the trial which resulted in his conviction and upon which verdict the death sentence was imposed.

There is no dispute as to the fact that more than half of the jurors who sat in the case had preconceived ideas that defendant was guilty of the offense charged. Some of them testified on the *voir dire* that it would take evidence to change that opinion. Defendant had exhausted his twenty peremptory challenges. His several motions for continuances had been denied.

One of the most important rights of our citizens is the right to a public trial by a fair and impartial jury. The courts should be ever alert to preserve that right untarnished. Baker v. Hudspeth, 10 Cir., 129 F.2d 779, 781.

I am well aware that a brutal crime is almost certain to receive extensive news coverage by newspapers, radio and television. I realize that in the instant case a prolonged effort was made to obtain an impartial jury, but I am, nevertheless, forced to the conclusion that the jury, as finally constituted, was not impartial. Possibly it was as impartial a jury as could have been found in Gibson County on that date, but that was not sufficient. That did not insure due process.

When it became apparent that an impartial jury could not be obtained, the motion for a further continuance should have been granted. The majority opinion argues that a further delay might not have been helpful, but, on the other hand, that public opinion might have been aroused by the slowness of the judicial process. The passage of time is a great healer. We have no right to speculate that any subsiding of public prejudice would be offset because our fundamental law insists that a defendant in a criminal case shall have a fair trial.

Another reason for the failure of due process in the instant case is that one of the two state prosecuting attorneys who tried the case also acted as a witness on the trial. The majority opinion, while conceding this was error, seems to brush it aside saying: "However, in this case we cannot adjudicate a question of ethics. * * *" Prosecutor Wever, who participated in examining prospective jurors, interposed objections to testimony, and otherwise actively participated in the trial. He then took the stand as a witness and testified concerning a confession made to him. Over objection, he made the closing argument to the jury, commenting on the evidence including his own testimony. Such conduct was in violation of Canon 19 of the Canon of Professional Ethics. Such conduct was offensive to the rights of the defendant to a fair and impartial trial.