233 So.2d 520

Roosevelt **YOUNGBLOOD**

v.

**STATE.**

3 Div. 27.

Court of Criminal Appeals of Alabama.

March 31, 1970.

Joe B. Thompson, Jr., Brewton, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The appellant, Roosevelt Youngblood, was convicted of the offense of murder in the first degree. His punishment was fixed at life imprisonment in the penitentiary.

The "Statement of Facts," borne out by the record and adopted by reference by the Attorney General's brief, is as follows:

"The facts as indicated by the evidence during the trial show that on or about January 15th, 1969, at around 3:30 or 4:00 o'clock, P.M. in the afternoon, following the feeding of a meal a guard was relieved of his keys to the segre- gated cell block containing unit three and four of the Atmore State Prison Farm. That various doors were open and prisoners were allowed to leave their cells; and that in the ensuing confusion the prisoners exercised control over the inside of the cell block units and that one Frank Felder who was a hall boy or one of the feeders was stabbed by Roosevelt Youngblood and/or Jackie Ray Ellis and/or other prisoners. That the War- den of State Prison Farm had to come and quell the riot that was developing and take control of the cell block units; that the prisoners therein were stripped and removed from the units and subse- quently placed in isolation."

The following is an excerpt from the court's oral charge:

"Now I feel that it is incumbent upon the Court to call your attention to one of the Statutes of our State. Title 14, Section 14, says this:—"The distinction between an accessory before the fact and a principal, between principals in the first and second degree, in cases of felony, is abolished; and all persons con- cerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in the commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors.' There's been some testimony here that there were several involved in this. When two or more persons enter upon a common enterprise or adventure, whether by prearrangement or an emergency and that enterprise con- templates the commission of a criminal offense then each is a co-conspirator and if the purpose is carried out each is guilty of the offense committed, whether he did any overt act or not. This rest on the principle that the one who is present and concurred in aiding, abetting or assisting or who is ready to aid, abet or assist in the act per- petrated, or the commission of the of- fense is a guilty participant, and in

the eyes of the law is equally guilty with the one who does the act. Criminal accountability stands not alone with the enterprise, adventure or encounter in which the conspirators are engaged but it takes in the proximate, natural and logical consequences of such offense, because all men are presumed to intend the proximate, natural and logical consequences of his act. The one who is present and encouraging or ready to aid in any offense must be presumed to be cognizant of the other's intention to the extent above expressed. If such conspiracy or community of purpose, embraces the contingency that a bodily encounter may ensue, with the common intention expressed or implied to encourage, aid or assist, even to the taking of life, the act of one becomes the act of all, and the one who encourages or stands ready to assist, is equally guilty with the one who perpetrates the violence. A conspiracy in general is defined as the federating together of two or more persons to accomplish some unlawful purpose, or a lawful purpose by some unlawful means. A conspiracy may be proven by circumstantial evidence. It is for the jury to determine whether or not a conspiracy existed. The law in this as in all criminal cases in this State, is the burden is upon the State to convince you beyond all reasonable doubt of the existence of a conspiracy and that the defendant is guilty of aiding, advising, encouraging or abetting Jackie Ray Ellis and others in the commission of the offense charged in this particular indictment.

The exception reserved to the charge is as follows:

"Defense Counsel (Mr. Thompson): Your Honor we'd like to except to the oral charge on conspiracy."

"The Court: Let the record show that the defendant Roosevelt Youngblood excepts to the court's charge as to a con-spiracy, on the ground that the evidence is insufficient to prove a conspiracy."

Counsel's sole argument in brief relates to the quoted portion of the court's charge. The insistence is that the evidence did not warrant a conspiracy charge and that the court's charge was not a correct statement of the law.

The evidence introduced by the state which tended to show a conspiracy may be summarized as follows: A guard was alone in the lobby and had locked the outside door. He walked to the control box and heard a commotion. He saw two men serving trays. As he leaned over to see into unit four someone grabbed his right arm. He was forced to the bar and dropped his keys. A knife was placed to his throat and he was taken to a cell in unit four. Defendant came to the cell and promised he would not be hurt if he stayed there. Defendant had a knife and there was blood on him. A prisoner saw the other prisoners come into unit three and saw defendant with a knife. He heard the victim say, Don't kill me; "don't you all kill me." He saw defendant stab the victim. Another prisoner testified defendant's cell was in unit four, but that he came to unit three and struck the victim with a knife in the stomach; that Jackie Ray Ellis ran up and struck the victim in the chest with a knife. (The medical testimony was that the blow to the chest caused death) Another guard looked into unit three and saw defendant and Jackie Ray Ellis holding the victim, and saw defendant strike deceased once. The victim slumped to the floor. Various prisoners who were loose were trying to open the other doors at the same time. Jackie Ray Ellis was attempting to operate certain controls in order to open other doors. Prisoners barricaded the door to the segregated units.

Defendant's evidence tended to show he was not present at the time deceased was killed, but that Glen Dickinson, who was

also killed, was the person who murdered Frank Felder.

The reasonable tendencies of the evidence justified and supported the instructions of the court which were correct statements of the law of conspiracy. Stokley v. State, 254 Ala. 534, 49 So.2d 284; Mabry v. State, 40 Ala.App. 129, 110 So. 2d 250; Patterson v. State, 234 Ala. 342, 175 So. 371; White v. State, 37 Ala.App. 448, 70 So.2d 287.

We have carefully searched the record, as is required in criminal cases, and finding no reversible error, the judgment is due to be and hereby is affirmed.

Affirmed.